[Docket Nos. 7, 10]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| MYCONE DENTAL SUPPLY COMPANY, INC., *d/b/a Keystone Industries*,<br><br>Plaintiff,<br><br>v.<br><br>GENERIC MANUFACTURING CORPORATION,<br><br>Defendant. | Civil No. 22-5791 (RMB-MJS)<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

**RENÉE MARIE BUMB, Chief United States District Judge:**

**THIS MATTER** comes before the Court upon the filing by Plaintiff Mycone Dental Supply Company, Inc. d/b/a Keystone Industries ("**Plaintiff**") of a Motion for Default Judgment as to Defendant Generic Manufacturing Corporation ("**Defendant**") pursuant to Federal Rule of Civil Procedure 55(b)(2). [Pl.'s Mot., Docket No. 7; Pl.'s Br., Docket No. 7-1.] Shortly beforehand, Plaintiff sought, and the Clerk docketed, an entry of default as to Defendant pursuant to Federal Rule of Civil Procedure 55(a). After submitting a notice of appearance, Defendant timely opposed Plaintiff's Motion for Default Judgment and filed a Motion to Set Aside the Clerk's Entry of Default pursuant to Federal Rule of Civil Procedure 55(c). [Def.'s Opp'n, Docket No. 9; Def.'s Mot., Docket No. 10.] Plaintiff filed a Reply Brief and timely opposed Defendant's Motion. [Pl.'s Reply Br., Docket No. 11; Pl.'s Opp'n,

Docket No. 12.] As the Motions are fully briefed, they are ripe for adjudication. For the reasons set forth below, Plaintiff's Motion for Default Judgment will be **DENIED** and Defendant's Motion to Set Aside the Clerk's Entry of Default will be **GRANTED**. This case shall proceed forward expeditiously on the merits.

I.   BACKGROUND

This is a breach-of-contract action concerning Defendant's alleged failure to deliver a specialized piece of machinery for Plaintiff's assembly line as scheduled. [Compl. ¶ 1, Docket No. 1.] Plaintiff, a New York corporation with a principal place of business in New Jersey, considers itself to be reputed worldwide for "producing innovative, high-tech products in the dental and cosmetics industries." [*Id.* ¶¶ 4, 9.] In response to the COVID-19 Pandemic, it began manufacturing and packaging hand sanitizer. [*Id.* ¶ 9.] Defendant, a Nevada corporation with a principal place of business in California, apparently considers itself to be a "leader in the packaging industry." [*Id.* ¶¶ 5, 10.] As the Pandemic waged on, the two companies decided to strike a deal.

On October 23, 2020, Plaintiff sent Defendant a purchase order for an automated "capping machine," which was to be used by Plaintiff to "apply caps, pumps, and spray heads to various bottles of hand sanitizer after the bottles had been filled." [*Id.* ¶¶ 12, 13.] On October 28, 2020, Plaintiff sent Defendant a deposit of $307,325, which represented fifty percent (50%) of the "complete system price." [*Id.* ¶¶ 13, 16.] Pursuant to the purchase order—the parties' contract—Defendant was scheduled to deliver the capping machine by March 21, 2021. [*Id.* ¶¶ 15, 17.] But there

were apparently difficulties completing the capping machine, and after considerable delays, Plaintiff terminated the purchase order by e-mail dated September 7, 2022 and sought return of the deposit. [*Id.* ¶¶ 28, 31.] On September 30, 2022, after Defendant failed to respond to Plaintiff's communication, Plaintiff initiated this action and asserted claims for breach of contract and conversion of its $307,325 deposit. [*Id.* ¶¶ 37–42, 43–46.]

On October 26, 2022, Plaintiff sought an entry of default, [Docket No. 5], as Defendant failed to plead or otherwise respond to the Complaint. The Clerk docketed Defendant's default the next day. [See Docket.] Defendant submitted a notice of appearance on November 15, 2022. [Docket No. 6.] On December 1, 2022, Plaintiff filed the pending Motion for Default Judgment, [Docket No. 7], which Defendant timely opposed on January 3, 2023, [Docket No. 9]. That same day, Defendant filed the pending Motion to Set Aside the Clerk's Entry of Default, [Docket No. 10], which Plaintiff opposed thereafter, [Docket No. 12].

## II.   LEGAL STANDARDS

A court may enter default judgment against a properly served defendant who fails to file a timely responsive pleading. FED. R. CIV. P. 55(b)(2); *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (Kugler, J.) (citing *Anchorage Assocs. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)). Before awarding a default judgment, courts first determine: "(1) whether the plaintiff produced sufficient proof of valid service and evidence of jurisdiction, (2) whether the unchallenged facts present a sufficient cause of action, and (3) whether the

3

circumstances otherwise render the entry of default judgment 'proper.'" *Interstate Realty Mgmt. Co. v. PF Holdings, LLC*, 2017 WL 53707, at *1 (D.N.J. Jan. 4, 2017) (Simandle, C.J.) (citation omitted). As to the third determination, "[t]hree factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

"A party seeking default judgment is not entitled to relief as a matter of right." *Interstate Realty Mgmt. Co.*, 2017 WL 53707, at *1. The decision to award default judgment is firmly committed to the discretion of the district court. *$55,518.05 in U.S. Currency*, 728 F.2d at 194 (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)); *see also* 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2658 (4th ed. 2023) ("This element of discretion makes it clear that the party making the request is not entitled to a default judgment as of right, even when defendant is technically in default and that fact has been noted under Rule 55(a)."). As the Third Circuit has repeatedly emphasized, there is a strong preference against default judgment "so that cases may be decided on their merits" whenever practicable. *$55,518.05 in U.S. Currency*, 728 F.2d at 194–95 (quoting *Tozer*, 189 F.2d at 245); *see also Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) (collecting cases). Accordingly, courts should resolve "doubtful

cases" against the party seeking default judgment. *$55,518.05 in U.S. Currency*, 728 F.2d at 195.

A court may set aside a clerk's entry of default for "good cause." FED. R. CIV. P. 55(c). In the same fashion as courts consider whether default judgment is "proper," courts employ the same *Chamberlain* factors to determine whether "good cause" exists to set aside an entry of default. *See Doe v. Hesketh*, 828 F.3d 159, 174–75 (3d Cir. 2016) (explaining that a court may invoke its discretion to set aside an entry of default "for good cause" by considering the *Chamberlain* factors) (first citing *$55,518.05 in U.S. Currency*, 728 F.2d at 195; then citing FED. R. CIV. P. 55(c)); *see also Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 51–52 (3d Cir. 2003) (discussing the relationship between *Chamberlain* and *$55,518.05 in U.S. Currency*). Courts have denied motions for default judgment where they have found good cause exists to set aside the clerk's entry of default. *See, e.g.*, *Tormasi v. Lanigan*, 363 F. Supp. 3d 525, 532–33 (D.N.J. 2019) (Wolfson, J.).

## III. DISCUSSION

In support of its Motion for Default Judgment, Plaintiff initially argues that it has set forth sufficient facts to establish its breach of contract and conversion claims. [Pl.'s Br. 5–8.] Based on the assertedly legitimate bases for its claims, the Court's uncontested diversity jurisdiction, and service of process, Plaintiff argues that it is entitled to a judgment of default as to Defendant. [*Id.*] It also contends that a judgment of default in the amount of $501,764.16 is warranted. [*See id.* at 8 (arguing that

5

Defendant should pay the cost of the deposit ($307,325), a contracted ten percent (10%) penalty for failing to deliver the capping machine ($61,465), and Plaintiff's labor costs associated with manually capping hand sanitizer bottles ($132,974.16)).]

In its Opposition, Defendant invokes the *Chamberlain* factors and argues that Plaintiff would not be prejudiced if Plaintiff's Motion for Default Judgment were denied and the clerk's entry of default set aside, that Defendant has meritorious defenses to Plaintiff's claims, and that the entry of default was not the result of Defendant's culpable conduct. [Def.'s Opp'n 3–7.] Defendant submits materially identical briefing in support of its Motion to Set Aside the Clerk's Entry of Default. [*Compare* Def.'s Opp'n 3–7, *with* Def.'s Br. 3–7.]

In its Reply Brief, Plaintiff contends that Defendant has failed to present a meritorious defense, that Defendant's delay was culpable, that Plaintiff would be prejudiced without default judgment, and that Defendant has waived any argument related to damages (as Defendant did not brief the issue). [Pl.'s Reply Br. 3–9.] Therefore, it urges this Court to award $501,764.16 to Plaintiff. [*Id.* at 9.]

Because both Motions depend on the Court's application of the *Chamberlain* factors, *see Hesketh*, 828 F.3d at 175 (determining whether "good cause" causes exists under Rule 55(c) requires assessment of the *Chamberlain* factors) (citing *$55,518.05 in U.S. Currency*, 728 F.2d at 195); *Tormasi*, 363 F. Supp. 3d at 533 (denying motion for default judgment where vacatur of default against party was warranted), the Court focuses its discussion below on whether vacatur of the clerk's entry of default against Defendant is warranted. Ultimately, because the Court will vacate the entry of default

6

against Defendant, the Court need not address Plaintiff's Motion for Default Judgment in full. *See Tormasi*, 363 F. Supp. 3d at 533.

### A. Prejudice to Plaintiff

First, as recounted above, the Court must determine whether plaintiff would be prejudiced if this Court were to vacate the Clerk's entry of default (and deny Plaintiff's Motion for Default Judgment). *See Hesketh*, 828 F.3d at 175; *Chamberlain*, 210 F.3d at 164. The Court concludes that Plaintiff would not be prejudiced. This action is still in its preliminary stages, and Defendant appears ready to submit a responsive pleading and litigate this matter on the merits. [*See* Def.'s Opp'n 4.[1]] In its prosecution of this case so far, Plaintiff has filed and affected service of the Complaint, requested the Clerk's entry of default as to Defendant, and filed its Motion for Default Judgment and supporting submissions. "While setting aside the entry of default would undue Plaintiff's minimal efforts so far, in this Court's view, such result would not constitute prejudice to Plaintiff." *Nyholm v. Pryce*, 259 F.R.D. 101, 105 (D.N.J. 2009) (Bumb, J.).

---

[1] Defendant has not provided a draft answer to the Complaint for the Court to consider in connection with the pending Motions, as Plaintiff argues it should have. [Pl.'s Reply Br. 4.] Rather, Defendant requests twenty (20) days from the date of this Court's Order to file an answer to the Complaint. However, elsewhere, Defendant challenges the plausibility of Plaintiff's claim of conversion based on the economic loss doctrine and would presumably seek to dismiss that claim. [See Def.'s Opp'n 5.] This Court has previously administratively terminated a plaintiff's motion for default judgment against a defendant in default to provide an opportunity for the defendant to supplement its opposition papers and file an answer so that the Court could properly assess whether the defendant had a meritorious defense. *See Nyholm v. Pryce*, 259 F.R.D. 101, 105–06 (D.N.J. 2009) (Bumb, J.). Here, the Court will decline to hold Defendant in default until an answer is filed, as the Court has sufficient information to assess whether to permit this case to proceed on the merits. As set forth below, the Court will provide Defendant twenty (20) days to file a responsive pleading.

Additionally, the Court rejects Plaintiff's argument that, absent default judgment and enforcement of the clerk's entry of default, Plaintiff would be prejudiced by incurring additional attorney's fees necessary to litigate this case on the merits. Such costs, while perhaps inconvenient for a diligent litigant such as Plaintiff, are an unavoidable component of practice; under these circumstances, they do not constitute prejudice. *See Choice Hotels Int'l, Inc. v. Pennave Assocs.*, 192 F.R.D. 171, 174 (E.D. Pa. 2000) ("The fact that a plaintiff will have to litigate an action on the merits rather than proceed by default does not constitute prejudice.") (citing *Duncan v. Speach*, 162 F.R.D. 43, 45 (E.D. Pa. 1995)).

Accordingly, this factor weighs in favor of setting aside the entry of default and denying the Motion for Default Judgment. *See Hesketh*, 828 F.3d at 175; *Chamberlain*, 210 F.3d at 164; *Tormasi*, 363 F. Supp. 3d at 532–33.

### B.  Meritorious Defense

Next, the Court considers whether Defendant has set forth a meritorious defense sufficient to warrant vacatur of default (and denial of the Motion for Default Judgment). *See Hesketh*, 828 F.3d at 175; *Chamberlain*, 210 F.3d at 164. Under *Chamberlain*, this Court is directed to ask, "whether the defendant ***appears to have a litigable defense***," 210 F.3d at 164 (citing *$55,518.05 in U.S. Currency*, 728 F.2d at 195) (emphasis added), though courts have tended to use the original language of *$55,518.05 in U.S. Currency*: "whether the defendant has a meritorious defense." *See, e.g.*, *Hesketh*, 828 F.3d at 175 (quoting *$55,518.05 in U.S. Currency*, 728 F.2d at 195). This factor is

8

demonstrated "when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action." *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (quoting *Tozer*, 189 F.2d at 244; then citing *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982)). Defendant must point to "specific facts" beyond "simple denials or conclusionary statements" for the Court to determine whether a defense exists. *Id.*

Of course, in *$55,518.05 in U.S. Currency*, the Third Circuit considered whether to set aside the clerk's entry of default ***and vacate default judgment***, which this Court understands to involve a more fulsome showing than when a court merely sets aside the clerk's entry of default ***and denies a motion for default judgment***. *See id.* The Third Circuit has previously explained that vacatur of an entry of default requires a less substantial showing than vacatur of a default judgment, even though the same factors are considered. *See Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982) ("Less substantial grounds may be adequate for setting aside a default than would be required for opening a judgment."). Indeed, where a default judgment has not been entered, courts have been reluctant to deny a motion to set aside the clerk's entry of default solely on the basis that no meritorious defense exists. *See, e.g.*, *Mike Rosen & Assocs., P.C. v. Omega Builders, Ltd.*, 940 F. Supp. 115, 120–21 (E.D. Pa. 1996) (observing that "[t]here is substantial authority that a lesser showing is required to set aside the entry of default" where a default *judgment* has not issued) (citation omitted). This Court is mindful that "doubtful cases" should be resolved in favor of setting aside an entry of default so that the case may by litigated on the merits. *Cf. $55,518.05 in*

9

*U.S. Currency*, 728 F.2d at 194–95 ("We require doubtful cases to be resolved in favor of the party moving to set aside the default *judgment* 'so that cases may be decided on their merits.'") (citing *Tozer*, 189 F.2d at 245) (emphasis added).

Here, Defendant has not yet filed an answer, see *supra* note 1, so the Court must discern whether a meritorious defense exists based on Defendant's Opposition to Plaintiff's Motion for Default Judgment and its Brief in Support of its Motion to Set Aside the Clerk's Entry of Default. Defendant submits two defenses and argues that it should not be deprived of discovery to demonstrate why Plaintiff cannot prevail on the merits of its breach of contract claim. [Def.'s Opp'n 4–6.]

First, Defendant argues that unavoidable delays resulting from the COVID-19 Pandemic impacted its ability to complete the automated capping machine in compliance with the deadlines the parties agreed to, and it points to Plaintiff's shifting specifications for the machine as a partial explanation for the delays. [Def.'s Opp'n 4–5.] For instance, Defendant's President explains that Plaintiff "changed the electrical design after [Defendant] already had the machine wired and ready to start testing," which resulted in completion delays. [Decl. of Lonnie Belts in Support of Def.'s Mot. ¶ 4, Docket No. 10-2 ("**Belts Decl.**").] Additionally, Defendant's President describes supply chain challenges and personnel reductions that resulted in setbacks for the business, which continued into 2022. [*Id.* ¶ 5.] Defendant contends that it should be excused from performance due to impossibility (or impracticability)— the "occurrence of a supervening event that was not within the original contemplation of the contracting parties." [Def.'s Opp'n at 5 (citing *JB Pool Mgmt., LLC v. Four Seasons*

10

*at Smithville Homeowners Ass'n*, 67 A.3d 702, 709 (N.J. Super. Ct. App. Div. 2013).] Plaintiff opposes the defense, arguing that the parties contracted for the delivery of the capping machine during the Pandemic, so the occurrence of the Pandemic and its resulting effects were either contemplated or reasonably foreseeable. [Pl.'s Reply Br. 5 (citing *Petrozzi v. City of Ocean City*, 78 A.3d 998, 1005 (N.J. Super. Ct. App. Div. 2013).] Based on Defendant's submissions, the Court finds that impossibility or impracticability *could be* a complete defense, depending on the facts elicited through discovery. Because Defendant's defense is not directly before the Court, it is hesitant to assess the merits in full and adopt any findings of fact. But the Court concludes that Defendant has met its burden of showing that a meritorious defense exists to Plaintiff's breach of contract claim, *see Hesketh*, 828 F.3d at 175; *Chamberlain*, 210 F.3d at 164, though the Court observes that, without more, Defendant is indeed on shaky ground.

Second, Defendant disputes that Plaintiff can establish the elements of its claim of conversion, as Plaintiff has not demonstrated its right to the ***immediate*** return of its deposit for the automated capping machine, and Defendant asserts that, in any case, conversion is barred here by the economic loss doctrine. [Def.'s Opp'n 5.] Plaintiff does not respond in its Reply Brief to Defendant's contentions, but in its Brief in Support of its Motion for Default Judgment, it argues that the Complaint establishes that Defendant's refusal to return Plaintiff's deposit has interfered with its right to immediate possession thereof. [Pl.'s Br. 7.] The economic loss doctrine precludes relief in tort for damages flowing directly from a party's breach of contract. *See Duquesne Light Co. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir. 1995) (observing

that the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract"); *see also Heyman v. CitiMortgage, Inc.*, 2019 WL 2642655, at *29–30 (D.N.J. June 27, 2019) (McNulty, J.) (collecting cases for the proposition that a conversion claim requires harm that is distinct from "the disappointed expectations evolving solely from an agreement") (citation omitted). Again, because the issue is not directly before the Court, it will not assess the merits of Defendant's assertion in full. Rather, the Court finds that the economic loss doctrine could preclude the claim of conversion, as recovery of Plaintiff's deposit appears to be a function of contract, vindicated through its breach of contract claim. Also, Plaintiff has not directly responded to either of Defendant's arguments. Therefore, the Court concludes that Defendant has made a sufficient showing that a meritorious defense exists to Plaintiff's conversion claim.

Accordingly, the Court finds that this factor weighs in favor of setting aside the Clerk's entry of default and denying Plaintiff's Motion for Default Judgment. *See Hesketh*, 828 F.3d at 175; *Chamberlain*, 210 F.3d at 164; *Tormasi*, 363 F. Supp. 3d at 532–33.

### C. Culpable Conduct

Finally, the Court addresses whether Defendant's delay and default were the result of culpable conduct. The third factor directs the Court to consider whether Defendant "acted willfully or in bad faith." *Feliciano*, 691 F.2d at 657. However, "[a]ppropriate application of the culpable conduct standard requires that as a threshold matter more than mere negligence be demonstrated." *Hritz*, 732 F.2d at 1183. The

terms—"willfulness" and "bad faith"—are not "talismanic" and should be understood in the context of the Third Circuit's "preference for avoiding default judgments where the circumstances do not justify such a result." *Id.*

Here, the Court concludes that Defendant's conduct was not culpable. As Defendant's President explains, Defendant experienced a number of commercial setbacks in 2021 and 2022, including staff reductions and supply chain delays. [Belts Decl. ¶¶ 4–5.] Defendant was required to relocate its facility. [*Id.* ¶ 5.] During portions of this period, Defendant's President indicates that he was the only employee, and he suffered personal and family hardships as well. [*Id.* ¶¶ 5–6, 8.] He indicates that as soon as he became aware of the clerk's entry of default on October 27, 2022, he sought counsel to communicate with Plaintiff and address the default. [*Id.* ¶ 9.] In fact, as Plaintiff submitted, Defendant contacted Plaintiff requesting consent to vacatur of default prior to Plaintiff's filing of its Motion for Default Judgment, [*see* Decl. of Gregory R. Sellers in Support of Pl.'s Mot. ("**Sellers Decl.**"), Ex. D, Docket No. 7-6 (Nov. 9, 2022 E-Mail from Daniel Devlin to Gregory Sellers)], but Plaintiff declined to consent to vacatur without Defendant articulating a meritorious defense, [Sellers Decl. ¶ 6]. Though Plaintiff's conditional offer is perhaps understandable given the delays it has experienced, the Court finds that Defendant's conduct does not rise to the level of "culpable conduct." *See Hritz*, 732 F.2d at 1183.

Therefore, the Court concludes that this factor weighs in favor of setting aside the Clerk's entry of default and denying Plaintiff's Motion for Default Judgment. *See*

*Hesketh*, 828 F.3d at 175; *Chamberlain*, 210 F.3d at 164; *Tormasi*, 363 F. Supp. 3d at 532–33.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that this matter should proceed forward on the merits, rather than by default. In closing, the Court will take the opportunity to caution Defendant that this Memorandum Opinion and Order should not be interpreted as approval for its lack of diligence thus far in this action. In the future, absent a showing of good cause, this Court will not hesitate to apply an appropriate sanction for any further delay. Therefore,

**IT IS** on this **31st** day of **May 2023**, hereby

1. **ORDERED** that Defendant's Motion to Set Aside the Clerk's Entry of Default [Docket No. 10] is **GRANTED** and the Clerk of the Court is directed to **VACATE** the entry of default against Defendant; and it is further

2. **ORDERED** that Plaintiff's Motion for Default Judgment [Docket No. 7] is **DENIED**; and it is finally

3. **ORDERED** that Defendant shall file a responsive pleading to the Complaint within twenty (20) days of this Memorandum Opinion and Order.

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge
